UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO, 20-TP-20045-BB

**UNITED STATES OF AMERICA**

vs.

**ERIC SEIDEN,**

    **Defendant.**

                                      /

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO AMEND CONDITIONS OF SUPERVISED RELEASE**

      The United States, by and through the undersigned Assistant United States Attorney, respectfully submits this response in opposition to the Movant's, Eric Seiden, motion to amend conditions of probation (the "Motion") (DE 3).  Relying on the constraints imposed by the COVID-19 pandemic, the Movant asks the Court to modify the conditions of his supervised release.  As discussed more fully below, the Court should deny the Motion because none of the factors under 18 U.S.C. § 3553(a) ("3553(a) factors") weigh in favor of his request.

**I.    FACTUAL BACKGROUND**

      According to the Presentence Investigation Report ("PSI"),[1] in September of 2008, the Movant met a boy that was under the age of 16 (the "Minor Victim") on the internet and the two began an online relationship that lasted until about July 2009.  *See* PSI at ¶ 10.  During that time, the Movant asked the Minor Victim to send him pictures.  *See Id.*  On one particular occasion, the Minor Victim sent the Movant an email that contained a picture of his erect penis.  *Id.* at ¶ 11.  The title of the email was "Enjoy the Cum."  *Id.*  In response, the Movant sent the Minor

---

[1] The United States will file the PSI under seal.

Victim a picture of his penis after he ejaculated.  *Id.*

In June of 2009, the Minor Victim advised the Movant that his parents were going to be out of town.  *Id.* at ¶ 13.  The Movant suggested that they meet.  *Id.*  To encourage the Minor Victim, the Movant told him that he would sleep with the Minor Victim whenever the Minor Victim wanted, that he loved the Minor Victim, and that he would bring a hat for the Minor Victim to wear to the hotel so that the Minor Victim could disguise himself.  *Id.* at ¶ 14.  The Movant also advised the Minor Victim that he never wanted to meet anyone so badly in his entire left.  *Id.*

On June 19, 2009, the Minor Victim agreed to meet the Movant.  *Id*. at ¶ 15.  The Movant drove from South Florida to Brevard County, which is approximately a three hour drive, to meet the Minor Victim.  *Id.* at ¶ 16.  The next day, the Movant picked the Minor Victim up from his home and they drove to the Hampton Inn.  *Id.*  While at the hotel, the Movant and the Minor Victim engaged in sexual intercourse.  *Id.* at ¶ 17.  Specifically, they performed oral sex on one another and the Movant performed anal digital penetration on the Minor Victim.  *Id.*

After the encounter, the Movant sent emails to the Minor Victim, recapping what happened.  *Id*. at 18.  In the emails, the Movant described how the two took g-rated pictures and how it felt to kiss the Minor Victim.  *Id.*  The Movant also reiterated that he loved the Minor Victim and stated that he was so happy to have the Minor Victim in his life.  *Id.*

On April 6, 2010, a federal grand jury sitting in the Middle District of Florida indicted the Movant, charging him with knowingly inducing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction which was transmitted via the Internet, in violation of Title 18, United States Code, 2251(a), transferring obscene material to an individual who had not attained the age of 16, in violation of Title 18, United States Code, Section 1470, and using the

2

Internet to entice a minor to engage in sexual activity, in violation of Title 18, United States Code, Section 2422(b).  *Id.* at ¶¶ 1-3.

On August 18, 2010, the Movant pleaded guilty to enticing a minor to engage in sexual activity.  *See United States v. Seiden*, Docket Entry 41 ("MD DE").[2]  The Honorable United States District Court Judge Anne C. Conway sitting in the Middle District of Florida sentenced the Movant to 135 months in prison, followed by 20 years of supervised release (MD DE 51).

In March of 2020, the Movant was released from prison and began his term of supervised release.  A few months later, on July 29, 2020, his supervision was transferred to the Southern District of Florida (DE 1).  On October 29, 2020, the Movant filed the instant Motion, seeking to have the conditions of his supervised release modified (DE 3).  Specifically, the Movant asks this Court to permit him to: (1) have a computer with access to the Internet in his home; (2) travel to the Middle District of Florida without prior notice to, or approval from, his probation officer; and (3) attend gatherings with family and friends at which minors will be present (DE 3 at 6).

## II.    LEGAL FRAMEWORK

Courts are authorized by statute to modify conditions of supervised release "at any time prior to the expiration or termination of the term of supervised release."  18 U.S.C. § 3582(e)(2).  Before doing so, however, the Court must consider the 3553(a) factors.  *See* 18 U.S.C. § 3583(d) and (e).  Relevant to this case, the conditions that a court may consider in deciding to modify the Movant's supervised release are: (1) the nature and circumstances of the offense and the history and characteristics of the Movant; (2) the need to reflect the seriousness of the offense, to promote

---

2 For ease of reference, the Middle District of Florida's docket will be referred to as "MD DE __" and all cites to the instant case will be referred to as "DE ___."

respect for law, and to provide just punishment for the offense; (3) the need to deter future criminal conduct; (4) to protect the public from further crimes of the Movant; and (5) to provide the Movant with needed medical care.  *See* 18 U.S.C. § 3553(a)(1) and (a)(2)(a)-(d).

## III.   ARGUMENT

As mentioned above, the Movant asks this Court to modify his supervised release to permit him to use a computer with access to the Internet while in his home, travel to the Middle District of Florida without prior notice or approval, and to attend gatherings where minors will be present. The Court should deny the Movant's Motion because none of the 3553(a) factors weigh in favor of his requests.

First, the Defendant asks the Court to grant him use of a computer with access to the Internet so that he can perform medical, religious, and banking activities.    He argues that because of the restrictions that have been imposed due to the coronavirus pandemic, he cannot engage in those activities without access to the Internet.   The Movant's request, however, is especially troubling in light of the nature and circumstances of his offense.   The Movant was convicted on charges stemming from meeting a minor using the Internet, exchanging sexually explicit photographs with the minor via the Internet, and then using the computer and Internet to entice the minor to have sex with him, which he did.    Providing a computer and Internet to the Movant will give him the means and opportunity to commit future crimes.   As the Eleventh Circuit noted, there is a "strong link between child pornography and the Internet, and the need to protect the public, particularly children, from sex offenders."    *United States v. Zinn*, 321 F.3d 1084, 1092 (11th Cir. 2003).    Indeed, "[t]he particular facts of this case highlight the concomitant dangers of

4

the Internet and the need to protect both the public and sex offenders themselves from its potential abuses." *Id.* at 1093.

Furthermore, the main basis for the Movant's request—that, without the Internet, he is unable to engage in medical, religious, and banking activities—is not accurate. While the government understands that having access to the Internet will make those activities easier, there are alternative methods available to the Movant to participate in them. For instance, the Movant can order his medication and conduct his banking activities by phone. The Movant can also take advantage of mail-order prescriptions. Additionally, while the government is not insensitive to the Movant's desire to attend religious services, the risk of reoffending is too great to permit him access to the Internet. The Movant can also attend religious services in person, at a different synagogue since the majority of the restrictions imposed as a result of the coronavirus pandemic have been lifted.

Second, the Movant has asked the Court to permit him to travel to the Middle District of Florida without prior notice or approval. Again, the nature and circumstances of his offense weighs against this modification. Indeed, to carry out the offense, the Movant drove from South Florida to Brevard County, about a three-hour drive, to meet the Minor Victim for the purpose of having sex. There would be no way to ensure that the Movant would not reoffend if his movements out of the district were not monitored. In order to protect the public, particularly children, the probation office in the Middle District of Florida needs sufficient time, prior to the Movant's arrival in its jurisdiction, to verify that the location where he will be residing is suitable and does not provide access to minors.

5

The government understands that the Movant may want to take care of his mother, but given the nature of his conviction and how he carried it out, it would present too much of a risk to permit the Movant to travel without adequate monitoring.   Also, the Movant has made reference to a very supportive family, who, presumably, would be able to assist him in caring for his mother in cases of an emergency.

Lastly, the Movant seeks to modify the so-called "no-contact with minors" provision of his supervised release.   He asks to have supervised family and friend gatherings where his niece and nephew may be present (DE 3 at ¶ 7).   The government acknowledges the social and emotional benefits of family functions, but the fact that the Movant is a hands-on abuser of children weighs heavily against allowing him to be around minors, even with other family members around.   As the Eighth Circuit has noted, it is not unreasonable to refuse to "incorporate a blanket exception" to the no-contact rule for the minors in a convicted sex offender's family "given the fact that most sexual abuse of children take place at the hands of family members or friends."   *United States v. Mickelson*, 433 F.3d 1050, 1058 (8th Cir. 2006).   Moreover, the Movant has not been completely forbidden from seeing his niece and nephew, but is merely required to seek permission prior to doing so.   *See* MD DE 56 at 4, ¶ 3.

**III.     Conclusion**

Based on the foregoing, the United States respectfully requests that the Court deny the Defendant's Motion.

>                              Respectfully submitted,
>
>                              ARIANA FAJARDO ORSHAN
>                              UNITED STATES ATTORNEY
>
> By:    */s/ Quinshawna S. Landon*
>                              QUINSHAWNA S. LANDON
>                              ASSISTANT U.S. ATTORNEY
>                              Florida Bar No. 99835
>                              99 NE 4th Street, 4th Floor
>                              Miami, Florida 33132-2111
>                              Tel. No. (305) 961-9362
>                              E-mail: Quinshawna.Landon@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 12, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

>                              */s/ Quinshawna S. Landon*
>                              QUINSHAWNA S. LANDON
>                              ASSISTANT U.S. ATTORNEY